UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ANTHONY EVANS, § § Plaintiff § § v. § CITY OF AUSTIN and JOHN DOE, § § Defendants § | CAUSE OF ACTION: 1:20-cv-1057 |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiff Anthony Evans brings this 42 U.S.C. § 1983 case against the City of Austin and Austin Police Department Officer John Doe for the brutal and excessive force they inflicted on him as he was peacefully exercising his right to peaceably assemble and protest and was doing absolutely nothing wrong.

### I. PARTIES

1. Plaintiff Anthony Evans is a resident of Travis County, Texas.

2. Defendant, CITY OF AUSTIN, is a municipality that operates the Austin Police Department and may be served through its City Clerk at 301 W. 2nd Street, Austin, TX 78701. The City's policymaker for policing matters is Police Chief Brian Manley. *Service is hereby requested at this time.*

3. Defendant John Doe is a police officer with the Austin Police Department, and is sued in his individual capacity for compensatory and punitive damages. He can be served with process at 715 E. 8th Street, Austin, Texas, 78701. At all relevant times, John Doe was acting under color of law as an Austin Police Department officer.

## II. JURISDICTION AND VENUE

4. As this case is brought pursuant to 42 U.S.C. § 1983, this Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5. This Court has general personal jurisdiction over Defendants as they reside and/or work in Travis County, Texas.

6. This Court has specific *in personam* jurisdiction over Defendants because this case arises out of conduct by Defendants that injured Plaintiff Anthony Evans, and which occurred in Travis County, Texas, which is within the Western District of Texas.

7. Venue of this cause is proper in the Western District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred in Travis County, which is within the Western District of Texas.

## III. FACTS

8. Black lives matter.

9. Anthony Evans is Black.

10. On May 31, 2020, Evans went downtown with his brother to participate in a demonstration against police brutality because police officers killed George Floyd and Michael Ramos.

11. On the evening of May 31, 2020, however, Evans became fearful as APD officers were firing dangerous projectile weapons into crowds without provocation. Anthony walked south with his hands up away from the police station, to safely get away from the police violence.

12. He posed no threat to anyone.

13. He was unarmed.

14. He was doing nothing that could conceivably be perceived as threatening to anyone.

15. He was completely and totally innocent.

16. Despite this, APD Officer John Doe inexplicably and unreasonably shot him in the face with a potentially lethal projectile.

17. The projectile hit Evans in the face, fracturing his jaw and causing significant physical pain, mental anguish, impairment, and disfigurement – injuries that he continues to suffer from, will continue to suffer from in the future, and that required surgery to begin to repair.

18. Tragically, Evans was just one of many innocent people APD officers used excessive force against on May 30 and May 31 who were doing nothing more than speaking out against police violence.

19. In fact, on May 30, 2020, APD overreacted numerous times and used chilling, excessive force on multiple individuals. Among others, APD's victims included Jason Gallagher, Saraneka Martin, Levi Ayala, and Bomani Barton.

20. Police used excessive force against Ayala.

21. Police used excessive force against Gallagher.

22. Police used excessive force against Martin.

23. Police used excessive force against Barton.

24. While numerous people had been injured by APD, including several who had suffered head injuries from projectiles fired by APD on May 30, 2020, rather than correct this unconstitutional behavior by his officers that he was aware of, Chief Manley and his senior leadership permitted APD to continue to fire dangerous projectile "beanbag" shotgun rounds at innocent people and into crowds from unsafe distances on May 31, 2020 as well.

25. As a consequence, in addition to Evans, numerous other defenseless individuals were victimized, shot, and injured with projectile "beanbag" shotgun rounds on May 31, 2020.

26. One of the many individuals APD shot was Justin Howell, a twenty-year-old Black student who had done nothing wrong and was merely exercising his clearly-established First Amendment rights.

27. Police used excessive force against Howell.

28. An APD officer even shot a civilian medic, Maredith Drake, with a protjectile "beanbag" shotgun round while she had her hands up and was simply trying to get the severely injured Howell to safety.

29. Police used excessive force against Drake.

30. Upon information and belief, when Doe shot Evans, he was also substantially motivated by his opposition to the demonstrators' message that police violence must end.

31. Upon information and belief, Doe shot Evans because he was Black. In fact, APD Officers have engaged in a pattern of employing excessive force against unarmed minorities over the last several years.

32. Among others, these include (but are by no means limited to) force used against Jesus Hernandez, Pete Hernandez, Sir Smith, Carlos Chacon, and Braion King, as well as the killings of David Joseph, Larry Jackson, Jr., Kevin Brown, Byron Carter, Ahmede Bradley, Jason Roque, Nathan Sanders, Daniel Rocha, and Michael Ramos, all of whom were unarmed when killed.

33. In fact, a 2016 study by the Center for Policy Equity found that APD disproportionately used force against people of color.

34. During this same time period, a high-ranking APD commander, Justin Newsom, who is white, regularly used invidious racial slurs. Among many other disgusting comments, Newsom referred to former President Barack Obama as "n----- one," to a former Black city councilwoman as a "dumb n-----," and to a former Black assistant police chief as "a n-----, but our n-----." When

Newsom's disgusting comments came to light, rather than discipline him, Chief Manley quietly allowed him to resign.

35. Further indicative of APD's failure to remedy its discriminatory practices is a 2020 analysis of city traffic data that found that black motorists comprise 25% of APD's arrests despite representing only 8% of its population.

36. In any event, Doe's attack on Evans (*i.e.* – shooting him with a projectile "beanbag" shotgun round) was unreasonable.

37. Moreover, the attack would chill a person of ordinary firmness from continuing to engage in protected speech and assembly (as police violence against other demonstrators already had for Evans, as he attempted to leave when Doe shot him).

38. Numerous APD officers watched Doe shoot Evans, but not one officer intervened to stop the outrageous shooting, just as no one intervened to stop the prior shootings.

39. After he was shot, Evans underwent emergency surgery.

40. Upon information and belief, Doe has not been disciplined by APD for using excessive force against Evans. Likewise, upon information and belief, neither Chief Manley nor any of Doe's supervisors have been disciplined for tolerating, authorizing, or endorsing this type of despicable and unconstitutional conduct.

41. This lack of discipline as to senior leaders and Manley himself is all the more shocking as Chief Manley agrees that Plaintiff Evans, Justin Howell, and numerous other individuals were victims of excessive force by APD officers on May 30 and May 31.

42. Moreover, APD Chief of Police, Brian Manley, adopted policies that authorized or tolerated this unreasonable, unnecessary and brutally excessive force even though Chief Manley had long known of the dangers of firing projectiles into crowds and at defenseless persons, and

Newsom's disgusting comments came to light, rather than discipline him, Chief Manley quietly allowed him to resign.

35. Further indicative of APD's failure to remedy its discriminatory practices is a 2020 analysis of city traffic data that found that black motorists comprise 25% of APD's arrests despite representing only 8% of its population.

36. In any event, Doe's attack on Evans (*i.e.* – shooting him with a projectile "beanbag" shotgun round) was unreasonable.

37. Moreover, the attack would chill a person of ordinary firmness from continuing to engage in protected speech and assembly (as police violence against other demonstrators already had for Evans, as he attempted to leave when Doe shot him).

38. Numerous APD officers watched Doe shoot Evans, but not one officer intervened to stop the outrageous shooting, just as no one intervened to stop the prior shootings.

39. After he was shot, Evans underwent emergency surgery.

40. Upon information and belief, Doe has not been disciplined by APD for using excessive force against Evans. Likewise, upon information and belief, neither Chief Manley nor any of Doe's supervisors have been disciplined for tolerating, authorizing, or endorsing this type of despicable and unconstitutional conduct.

41. This lack of discipline as to senior leaders and Manley himself is all the more shocking as Chief Manley agrees that Plaintiff Evans, Justin Howell, and numerous other individuals were victims of excessive force by APD officers on May 30 and May 31.

42. Moreover, APD Chief of Police, Brian Manley, adopted policies that authorized or tolerated this unreasonable, unnecessary and brutally excessive force even though Chief Manley had long known of the dangers of firing projectiles into crowds and at defenseless persons, and

was actually aware that bean bag rounds fired from shotguns had been unreasonably used multiple times on May 30, 2020 and multiple times again on May 31, 2020 prior to the attack on Evans. Despite this, and Manley's awareness of the severe injuries caused by them, APD policies – and Manley – authorized their continued use.

43. Chief Manley knew, as any reasonable policymaker capable of rational thought would also know, that as a direct consequence of such practices, innocent people like Plaintiff would be injured and victimized, and their constitutional rights violated.

44. And, in fact, numerous other people suffered severe and devastating injuries as a result of APD's practices and excessive force on May 30, 2020 and May 31, 2020.

45. According to Dell Medical Center's physicians, seven victims required surgical interventions and four victims retained portions of the "beanbag" shotgun rounds in their bodies/heads.

46. More particularly, victims suffered intercranial hemorrhages, depressed skull fractures, depressed frontal bone fracture, fractured jaws and brain damage.

47. After ignoring the pattern of excessive force that preceded the attack on Evans for several more days, multiple members of the City Council called for Manley to be removed as APD's Chief of Police.

48. Following the calls to remove him, Chief Manley acknowledged the obvious, the policies at Austin Police Department concerning the use of bean bag shotguns were dangerously flawed and he agreed to change them – a change any reasonable policymaker should have known to have made prior to Plaintiff being shot.

## IV. CAUSES OF ACTION

### A. FOURTH AND FOURTEENTH AMENDMENT EXCESSIVE FORCE – AS TO DEFENDANT JOHN DOE

49. APD Officer John Doe, while acting under color of law, used excessive force on Anthony Evans when he posed no danger to anyone.

50. APD Officer John Doe's use of force was wholly excessive to any conceivable need, objectively unreasonable in light of clearly established law, and directly caused Plaintiff Evans to suffer serious injuries. Therefore, APD Officer John Doe violated Evan's clearly established Fourth Amendment right to be free from excessive force and unreasonable seizure.

51. As a direct and proximate result of APD Officer John Doe's actions, Evans suffered and continues to suffer significant injuries.

### B. FIRST AMENDMENT RETALIATION – AS TO DEFENDANT JOHN DOE

52. Plaintiff incorporates the preceding paragraphs as if alleged herein.

53. The First Amendment's protections for free speech and assembly prohibit agents of the government from subjecting an individual, like Evans, to retaliation for engaging in protected speech rights.

54. Evans exercised his free speech and assembly rights by attending the demonstration against police violence.

55. Upon information and belief, Doe's use of force against Evans was substantially motivated by his disagreement with the content of Evans' speech. Upon information and belief, Doe shot Evans with the beanbag shotgun substantially because Doe disagreed with Evans' right to assemble and/or his protected speech.

56. In addition, Evans was yet one more unarmed minority senselessly injured by APD's use of excessive force. Among others, these include Saraneka Martin, Levi Ayala, Bomani Barton, and Justin Howell.

### C. PUNITIVE/EXEMPLARY DAMAGES – AS TO DEFENDANT JOHN DOE

57. Plaintiff incorporates the preceding paragraphs as if alleged herein.

58. Defendant's conduct was egregious, reckless, and endangered countless community members. Plaintiff seeks punitive damages as well to deter future uses of such excessive force.

### D. FIRST, FOURTH AND FOURTEENTH AMENDMENT § 1983 *MONELL* CLAIM – AS TO DEFENDANT CITY OF AUSTIN ONLY

59. Plaintiff incorporates the preceding paragraphs as if alleged herein.

60. The City of Austin, had the following policies, practices, or customs in place when APD Officer John Doe unreasonably shot Plaintiff Evans:

   a. Shooting kinetic projectiles into crowds where innocent people could be injured;

   b. Using, authorizing, and/or tolerating excessive force against non-violent protestors;

   c. Failing to adequately discipline officers;

   d. Failing to adequately supervise officers;

   e. Failing to adequately train officers concerning de-escalation of force, crowd control, use of force against non-violent protestors, and the use or misuse of kinetic projectiles

   f. Failing to train officers regarding demonstrators' free speech and assembly rights;

   g. Not intervening to stop constitutional violations, including excessive force;

   h. Failing to train or instruct officers about specific incidents it considers unreasonable, excessive force, or in violation of the Constitution; and

   i. Disproportionately using and tolerating excessive force, including deadly force, against unarmed people of color.

61. Each of the policies, practices, or customs delineated above was actually known, constructively known and/or ratified by City of Austin and Chief of Police, Brian Manley, and was promulgated with deliberate indifference to Evans' First, Fourth and Fourteenth Amendment rights under the United States Constitution.  Moreover, the known and obvious consequence of these policies, practices, or customs was that Austin Police Department officers would be placed in recurring situations in which the constitutional violations described within this complaint would result.  Accordingly, these policies also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.

62. Consequently, the policies delineated above were a moving force of Plaintiff's constitutional deprivations and injuries, and proximately caused severe damages.

63. Moreover, Chief Manley and senior level APD superiors knew that multiple officers had violated individuals' right to speech and assembly, and had used excessive force at the protests the day before and earlier on May 31. As a consequence of them not stopping the abusive tactics, they caused numerous people to suffer serious injuries. Thus, they condoned and ratified the abuse. Moreover, the City and its leadership, including Chief Manley, is aware through court findings, litigation, video footage, and investigations of a pattern of racism and disproportionate and excessive force used against minorities by APD officers. Accordingly, the City is also liable directly for its policymakers' misconduct and failure to adequately supervise, train, and stop APD officers from using excessive force and violating protestors' first amendment and equal protection rights, which was a proximate cause of Plaintiff's deprivation of rights and injuries.

64. Plaintiff Evans brings this claim pursuant to 42 U.S.C. § 1983.

## V. DAMAGES

65. Plaintiff Evans seeks the following damages:

    a. Past and future medical expenses

    b. Past and future economic damages, including (but not limited to) loss of earning capacity;

    c. Past and future physical pain and mental anguish;

    d. Past and future impairment;

    e. Past and future disfigurement;

    f. Exemplary/Punitive damages as to Defendant Doe; and

    g. Attorneys' fees pursuant to 42 U.S.C. § 1988.

## VI. PRAYER FOR RELIEF

66. To right this injustice, Plaintiff requests the Court:

    a. Award compensatory damages against the City of Austin, and compensatory and punitive damages against the individual Defendants, including APD Officer John Doe;

    b. Award Plaintiff costs and fees, including but not limited to expert fees and attorneys' fees, pursuant to 42 U.S.C. § 1988;

    c. Award pre-judgement and post-judgment interest at the highest rate allowable under the law; and,

    d. Award and grant such other just relief as the Court deems proper.

Dated: October 120, 2020

Respectfully submitted,

**EDWARDS LAW**
1101 East 11th Street
Tel.  512-623-7727
Fax.  512-623-7729


By /s/ *Jeff Edwards*
JEFF EDWARDS
State Bar No. 24014406
jeff@edwards-law.com
SCOTT MEDLOCK
State Bar No. 24044783
scott@edwards-law.com
MIKE SINGLEY
State Bar No. 00794642
mike@edwards-law.com
DAVID JAMES
State Bar No. 24092572
david@edwards-law.com


**FOGELMAN & VON FLATERN, LLP**
3101 Bee Cave Road, Suite 301
Austin, Texas 78746
Tel. (512) 956-4789
Fax. (512) 956-9290

By:  */s/ Aaron von Flatern*
Aaron von Flatern
Texas Bar No. 24076892
Email: aaron@fvlawfirm.com
Service: eservice@fvlawfirm.com
Shawn M. Frazier
Texas Bar No. 24090103
Email: shawn@fvlawfirm.com
Service: eservice@fvlawfirm.com


**ATTORNEYS FOR PLAINTIFF**